May it please the Court. Mike Manning for the Appellant, Douglas Peterson. Mr. Peterson's motion for reconsideration was not simply a rehash of the arguments he made in opposition to summary judgment. As a pro se prisoner, certainly there was some overlap, but Mr. Peterson made two distinct points that should be considered an argument that the district court misapplied the underlying summary judgment standard. The first was that Mr. Peterson argued that the district court should not have used the defendant's affidavits as undisputed facts. And second, he asked that the district court look at all of the evidence which the district court did not do, because it included sufficient evidence to support Mr. Peterson's claims. Without any real knowledge of the law, this was about as close as Mr. Peterson was ever going to come in a motion for reconsideration to arguing that the district court misapplied the underlying summary judgment standard. What do we do with the fact that this is not an appeal from the summary judgment rather from a denial of a Rule 60 motion? You obviously would be in a better position were this a straightforward appeal. Absolutely. There's no doubt that Mr. Peterson is sort of saddled with himself with a much tougher standard of review here, but it's one that he can overcome, because the district court committed clear legal error in its underlying summary judgment motion, and that's grounds for reconsideration under Rule 60b-1. The district court, in the underlying summary judgment order, certainly cited the liberal standard applicable to pro se litigants generally, but it didn't acknowledge the more lenient summary judgment standard applied to pro se prisoners, nor did it apply that standard. Mr. Peterson's motion for reconsideration was right. The district court considered all of his sworn statements as contentions and considered the defendant's sworn statements as undisputed facts. In our briefs, we detailed each of Mr. Peterson's three 1983 claims, but there's one example that I think is particularly telling. The district court in its summary judgment order found, and Mr. Peterson did not dispute, that Sheriff Anderson and Under Sheriff Blower would have been aware of any medical requests that Mr. Peterson made while he was in Pend Oreille County. Mr. Peterson submitted a sworn statement at ER 46 that he did indeed make such a request, that on October 20, 2006, he asked to go back and see the doctor because he was still in pain because the new gout prescription he'd received a couple days earlier wasn't working. Let me ask you this. Let's just ignore the procedural posture for a moment. Let's pretend that we're just on straight summary judgment. What in your view, taking the evidence from the point of view of your client as we're supposed to do on summary judgment, what in your view constitutes a condition to confinement violation? Conditions of confinement, the first, that he didn't receive any oral hygiene items in the 77 days that he was incarcerated in Teton County, and second, that he was allowed only six showers in that time. As far as denial of medical care, the October 20, 2006, incident where he was incarcerated in Pend Oreille County, he requested medical care on October 20, and four days later, he was finally taken to the hospital where he had to stay for two days and then was confined to a wheelchair after he returned to the jail. But the problem that the Court focused on was that there's no allegation of actual communication to or proof of communication directly to the two named defendants. And I understand that a prisoner in a situation like that might have trouble identifying on a single one-off situation who the guards were that may have mistreated him or in the case of the medical where there was a refusal, but how do we deal with a situation where he's pinned his whole allegation on personal failures of the sheriff and deputy sheriff? There's no allegation that there's an unlawful policy, so where's the link? Mr. Peterson, particularly as a pro se? With regard to the medical claim, the two findings that I was discussing the one finding I should say. The finding of the district court that Sheriff Anderson and Under Sheriff Blower would have been aware of any medical request that Mr. Peterson made in Pend Oreille County, and Mr. Peterson's sworn statement that he made such a request. The standard for medical indifference simply requires that Sheriff Anderson or Under Sheriff Blower knew of the constitutional violation and failed to do anything to remedy it. Mr. Peterson also submitted a sworn statement that the sheriff of Pend Oreille County called Under Sheriff Blower on October 20th and that Sheriff Blower said that he would get back to him, and then he let Mr. Peterson sit in his cell for four days until an EMT came the night before, and then Sheriff Blower actually came with the ambulance the next day to transport Mr. Peterson back. That's all out of Mr. Peterson's declaration, correct? The statements that he made the medical request for treatment and that the Pend Oreille County sheriff called Sheriff Blower are both Mr. Peterson's sworn statements. The finding that Sheriff Anderson and Sheriff Blower would have been aware of any request was in the district court's summary judgment order. Does Peterson's statement say that he heard the sheriff make that phone call? It just says that the sheriff made that phone call. Okay. And he doesn't indicate how he would know that. He doesn't, but liberally construing it, I think he would know. And he wouldn't know what was being said on the other side unless he was listening to a conversation that was on a speaker, for example. No. He would have had to have been told that that was Sheriff – Under Sheriff Blower's response. And that, of course, would make it hearsay. I think that it would be an admission against interest. Even the statement from the Pend Oreille County sheriff to Peterson would be an admission against interest because – No, it's not a part of it. It's undisputed that Pend Oreille County – Admissions are against interest. It's just an admission. True. It's undisputed that while Peterson was in Pend Oreille County, he was still in the custody of Teton County. So the Pend Oreille County sheriff was acting as an agent or at least on behalf of the Teton County sheriff and undersheriff at the time. So his statement to Mr. Peterson would be an exception to hearsay. Can I come back to the practicalities that we're facing and that he was – Mr. Peterson was facing? He is attributing a statement to someone who is a known witness. He has not reached out or made any showing that he tried to get the person making the call, who would have been a precipient witness, to make a declaration or confirm what Mr. Peterson is saying. So what weight do we give that and what's the district court supposed to do with that? I don't think that the district court even needed the statement that undersheriff Blower had responded, I'll get back to you, based on the finding that Sheriff Anderson and undersheriff Blower would have been aware of any request. And Peterson sworn statement that he made a request, which was certainly admissible and based on personal knowledge. Because it's a – it's not even a leap at that point to a request being made and then the four days going by. What do we do with – I mean, if this were ordinary litigation, lawyers on both sides and so on, it's a fairly easy matter to hold against the plaintiff in a summary judgment. Wait a minute, you didn't get a declaration, you didn't do discovery and so on. What difference is there, if any, when we're dealing with a pro se plaintiff in the circumstances of Mr. Peterson when we're tempted to say, well, you know, all we have is his word for it. We don't have a declaration in the file from any of these other people. The standard that this circuit has adopted required the district court to consider any sworn statements that Mr. Peterson made in any motion or any pleading as evidence. And that's really where I think the district court failed. I'd like to reserve the balance of my time. Kennedy, I'd like to ask one other question. You can, I think, take a minute to answer it. The defendants, both of them, as I recall, said in their affidavits or declarations that they had contact with Mr. Peterson and they said he never made any requests to him or not. Now, Mr. Peterson does not ever refute the allegation that he had actual face-to-face communication. Rather, as is set forth in the briefing, I think, or in his allegations, was that he would try to get word to them, to Blower, and this was the standard response from several of the deputies with whom the petitioner was forced to take his issues. That's what he says. His picture that comes across from his allegation is he never had direct contact, therefore was always relying on intermediaries. And yet when they specifically say, we had contact with him and he never raised any of these with us, there's no grievances in the file, what's the impact of that? I agree that he didn't directly address that allegation. He swore in his complaint that Sheriff Anderson and Under Sheriff Blower ignored his request to speak with him about the incident. And I think it probably comes down to a question of weighing the evidence. There's certainly evidence on their side that they had personal contact and he never asked them about it. He submitted evidence that they ignored my request to speak with him about it. And I think that's the Jett case where 1983 defendants can't obtain summary judgment by simply swearing they didn't receive requests that a prisoner swore that he made. And it certainly might weigh heavily in their favor in front of a jury. I take your point, but I don't think you're answering my question entirely. The point is he makes affirmative statements that he always had to deal through intermediaries. That's different from just saying they ignored my request. Yes, he said that, but there's nothing in the rest of his declaration that says that what you're arguing is a weighing inference. Rather, within the zone declaration, it suggests that he's not responding to it. It just says, I always had to go through intermediaries. I think the distinction is maybe that he said that he always did go through intermediaries and not that he had to go through intermediaries, which I think is the weighing question, which, frankly, might weigh heavily in their favor in front of a jury. But all of his statements were, I made these requests to the unnamed deputies, not I was forced to make the request to unnamed deputies. Well, you can look at this and maybe come back on rebuttal, but I'm looking at ER-119. It says, And if that is a sworn statement on Mr. Peterson's part, then I think that resolution of the issue in the defendant's favor would have been incorrect, because there's the sworn statement by Mr. Peterson that I only had contact with the deputies, and there's the sworn statement by Anderson and Peterson that I only had contact with Mr. Peterson. I think that's, he said, she said, that needs to be resolved in Mr. Peterson's favor. Okay. We'll hear from the other side, but we will give you a chance to respond. I'm here on behalf of Blower and Anderson, the appellees. If you could keep your voice up, please. I would first like to address the medical issue that counsel just brought up. The Court recognized that all sworn contentions and arguments in briefs and affidavits have to be considered, that they have to have admissible evidence in order to survive summary judgment. Related to the medical care, Peterson never specified any facts as to who told him the information. What he states in his brief is that Ponderay County Sheriff Kuka personally made a call under Sheriff Denny Blower to request authorization that Ponderay County transport him to a medical center. When contacted, the Teton County officer informed the deputy that they would get back to them on the request. That's what he argues in his brief. In this contention, which refers to an unnamed officer and not Blower, there's no admissible evidence that Blower was a participant in the conversation or even had knowledge of the call. Nor is it clear that Sheriff Kuka and the deputy who spoke to the officer are even the same person. What do we do with the fact that this is a pro se prisoner case instead of a sort of a fully lawyered case? I mean, I understand that if I were dealing with paid lawyers on both sides of some sophistication and so on, I would hold an affidavit or a declaration to a fairly high evidentiary standard in terms of personal knowledge. This is not such a case. What do we do with that? Well, I understand that there has to be some leeway given to pro se inmates, but there has to be more than mere conclusions in order to survive a summary, a motion for summary judgment. Well, it's not a conclusion. It's a statement of fact. And the question is, how does he know that that's a fact? He's never specified any admissible evidence. I don't know how he could get around that. This might be an issue where he just couldn't get around it, because all he's saying is someone told him that someone else said that this had happened. That's the point. This clearly would have been difficult in Mr. Peterson's position, because he was not even at Pend Oreille County anymore. He had been moved out of there.  at Pend Oreille County. And they didn't just have the statements of the defendants in analyzing this issue. The Court also had the corroborating Pend Oreille County jail logs and records. And what do those logs and records say? They show that Mr. Peterson was taken to the physician on October 18th and prescribed some new medication. It reflects that on October 19th, the day after he went to the physician, he was unhappy with the new medication and threatening to sue. That's contained in the Pend Oreille County jail logs. The jail logs reflect that between October 19th and October 23rd, when the EMTs were called in, he ate meals, he watched TV, he played cards. There are no requests for medical care. There are no complaints about medical care. There's no information that Pend Oreille County had that they could relay to Teton County. And how do we treat those logs? We're familiar, of course, with the fact of sloppy record keeping. I have no idea whether these logs are accurate. He says something. There's nothing in the logs, one way or the other, from which you would draw, I think if we were doing this as a matter of trial of fact, a perfectly reasonable inference, well, that means nothing happened. But how do we take those logs as evidence at a summary judgment stage that says his story's not true? Well, from the Pend Oreille County jail logs and jail records, there had been other requests for care. He had made requests for care while in Pend Oreille County. There had been other notations in the log of the EMTs. No, I understand that. So I guess in the absence of it, in the face of other notations that were made, the absence of it would indicate that he had made requests for care. But what I'm after is it seems to me that you're asking the district judge and now us to resolve what could be a disputed questions of fact. Are these logs accurate? I don't know. Do they contain everything that should have been put in them? I don't know. Let me ask another somewhat related question. His allegation was fairly specific that at least Blower was made aware of his October 20 request because Ponderosa County Sheriff Kuka personally made a call to Undersheriff Denny Bower to request the Teton County issue authorization, et cetera. There's nothing in the record that the defendants produced from Sheriff Kuka to deny that he ever made such a call. So what weight do we give to that? The defendants didn't have any trouble getting a statement from an alleged precipiate witness. Do we draw any inference from the fact that there isn't? I can't answer that, Your Honor. I don't know what the absence of that should indicate to the Court. Sort of a smoking gun. I don't think it is a smoking gun. Kuka would, you know, file a declaration along with the two defendants that I never made such a call. End of story. Well, in other the other instance in which there is record that Ponderosa County had contacted Teton County and they had came and retrieved Mr. Peterson and took him to the dentist. There is also record that Ponderosa County contacted them on the 23rd of October and Teton County responded. I think the record of responses in other instances is what is significant. But you do have a dog that didn't bark problem. Now, taking, and I understand that this is not what you want to do, so we'll just take it for the purpose of the question. Take everything that Mr. Peterson has said is true. Does it state a cause of action with respect to failure to provide medical care in that four-day period that would constitute a cause of action for conditions of confinement under the Eighth Amendment? I don't think that it does. Because? Because he was taken to the hospital on the 18th. He was retrieved from Ponderosa County three days later, four days later, and taken to the hospital. I don't think it's a denial of medical care. I don't think it raises to a level of denial of medical care. I'm having a difficult time with the fact that he's required to produce some evidence in order to And his bare conclusions are not supported by any facts. And that's what the district court had to look at. Nothing but his bare conclusions. The objective medical or, excuse me, the objective evidence contained in the logs that he wasn't complaining. There is no indication that. But that's a different question. I mean, I asked you to assume everything he says is true. Let me ask you now as to the other part of the complaint he's making, which is to say that quite aside from the four days before he was taken to the hospital for the second time, he says, during a sustained period, I was allowed to have a shower once a week, and I was never given anything for, I don't know why we're calling it oral hygiene. He was never given a toothbrush or a toothpaste. Assuming that that's true for purposes of my question, is that an Eighth Amendment conditions of confinement violation? Well, in the brief in front of the lower card, I discussed that at length. And Mr. Peterson did have access to running water. And he could, he may have not, even if it was true that he did not have access to a shower, he had access to being able to bathe himself, clean himself. When you say access to running water, a wash basin in the cell? What are you talking about? Yes, a wash basin with hot and cold running water in his cell. Soap? Well, I know for a fact a wash, and that's what the facts reflect, a wash basin with hot and cold running water. And so my question was soap, and your answer is you don't know? I cannot answer that. Okay. And toothbrush, toothpaste? Assuming that his allegation is true, that he hadn't, based on the log, that he hadn't gotten it, I hate to concede that, but I guess that it would be a difficult circumstance to live in. But I don't think that that's where this Court should be looking. And I need to state that for the record, that the evidence did not support that, the probative evidence. That's a different question. I'm asking you, assuming we just take his story flat true and that's the end of it for purposes of my question, the fact that he was, the quote fact, that he never had anything to brush his teeth during that sustained period, in your view, is or is not a constitutional violation? I think that the President of this Court would state that, yes, it is. Okay. And it's not a violation. Okay. Thank you. Thank you. I'd like to just ask, just to focus one question. We've spent a lot of time talking about the merits of the summary judgment ruling. But the issue before us, as I understand it, is whether there was clear error in the district court's application of the summary judgment standard. So could you state how you would frame our discussion to bring it back or frame whatever you expect our ruling to be to stay within the ambit of what we're reviewing? Yes. Our argument is that the district court committed clear legal error by failing to apply the appropriate standard in its underlying order. And what Mr. Peterson is requesting is that the Court reverse the denial of the motion for reconsideration. And he did it by not retreating. By what? He did it by failing to consider Mr. Peterson's sworn statements as evidence and instead relying on the affidavits of the defendants as undisputed facts when Mr. Peterson had sworn statements directly to the contrary. If I could just briefly address the shower issue. The contention that there was a wash basin in the cell, while undisputed, it's also undisputed that Mr. Peterson was confined to a wheelchair during his time in Teton County, and he swore that he had no soap and no toothpaste while he was in the cell. The soap was issued together with the toothpaste, according to the sheriff. Is that right? That's correct. And Mr. Peterson swore that he was not issued soap or toothpaste. But even if he had been in a wheelchair, presumably he would have been able to have access to the basin. With some difficulty, I would say. I mean, certainly he could have splashed water on himself. Is there anything in the record on that as to whether this was wheelchair accessible or whether he was able to maneuver himself over to the basin and then stand up? There was nothing in the record on that, simply that he was confined to a wheelchair. Did he have to be assisted to the toilet? There is nothing on the record one way or the other. We know that he had some constipation. We know he had some difficulty with that, but we don't – there's nothing in the record that suggests that he couldn't help himself to the bathroom, to the toilet. No, there's nothing in the record one way or the other on how the confinement to the wheelchair affected him as far as handicap access issues. Okay. Thank you. Thank you. I thank both sides for your very straightforward and helpful arguments. The case of Peterson v. Blower is now submitted for decision.
judges: Fletcher, Fisher, Bybee